## NEARING ET AL. v. THE TOLEDO ELECTRIC STREET RY. CO.

**1. TITLE TO COUNTY PROPERTY.**

In legal effect the title to property owned by a county for county purposes rests in the county commissioners.

**2. CONSENT FOR USE OF COUNTY PROPERTY BY A STREET RAILWAY.**

The board of county commissioners is the proper source from which to obtain a consent of county property (court-house) for the use of a street by a street railway.

**3. ACTION OF COMMISSIONERS NEED NOT BE ENTERED ON JOURNAL.**

The action of a board of county commissioners consenting in writing for a street railway to occupy a street, is valid, although not entered in the journal of the board; such action may be shown to have been taken by parol evidence.

APPEAL from the court of common pleas of Lucas county.

HAYNES, J. (orally).

This case was heard some time ago, but under press of circumstances, the decision has not been delivered before this. I will state the points that were submitted, and our decision in the case upon them.

The suit is brought by Mars Nearing and Mary Nearing, as owners of property abutting upon Adams street, for the purpose of enjoining the Toledo Elec-

tric Railway Co., from entering upon that street, and running its cars upon it; and the question is submitted to us in regard to the signatures of the county commissioners to a paper consenting to the use of that street by the property owners; and our understanding is, that that is the only question that we are called to pass upon in this case. Other questions that were raised have been decided by this court in other cases, especially *Sanfleet* v. *Toledo*, 8 Circ. Dec.,711, and the findings and decision of the court in this case will be the same as in that case on those questions.

The property owners upon the street to a certain number having consented to the electric street railway using that street, it was desired to get the signatures of the county commissioners, or the representatives of the county of Lucas, for the property known as the court house property, abutting upon Adams street. That property was owned in part originally by the county, in part by the city, and a certain portion of it was originally a street of the city of Toledo, and was vacated by the action of the public authorities. It is admitted that if the signatures of the commissioners or the consent of the commissioners, is properly given for so much of the property as is owned by the county, that will warrant the court (under the rulings of the court heretofore made upon like questions), in determining that the. requisite number of consents had been given to the electric company to enter upon the street, and therefore would be fatal upon that point to the claim of the plaintiffs.

The paper that is submitted to the court which has the signatures of the commissioners upon it, reads as follows:

"We, the undersigned property owners, hereby give to David Robinson, Jr., trustee, his successor or assigns, the right to construct such appliances as may be necessary to operate an electric street railway along the following streets, to-wit: On Adams street from Michigan street to Summit street," etc.

It is signed first "W. W. Cooke, commissioner," "John Ryan," and ditto underneath, and "J. Englehart," and ditto underneath, "537 feet." It is objected that that signature is insufficient. It is claimed on behalf of the plaintiffs that there should be in existence record evidence in the office of the county auditor, upon the journals of the county commissioners, of the action of the board of county commissioners in that behalf; and that, in short, is the contention between the parties as to that matter.

Section 850, Revised Statutes, provides that "the clerk shall keep a full and complete record of the proceedings of the board, in a suitable book provided for the purpose, entering every motion, with the name of the person making the same, on the record; and he shall call and record the yeas and nays on every motion which involves the levying of taxes, or the appropriation or payment of money." There are further provisions in regard to other matters, but that I think is all that is material to this case. There is another section which bears upon the question of records, which is section 878:

"It shall be essential to the validity of every contract entered into by the county commissioners, or order made by them, that the same has been assented to at a regular or special session thereof, and entered in the minutes of their proceedings by the auditor."

That law is found in the 53d volume of the statutes, p. 153, section 4; and Swan & Critchfield, section 250.

It is proper in looking at this question, to inquire what the object and purpose of the act of the commissioners is. As is well known to counsel in the case —it has been stated before in various cases—the city council have authority to allow, or did have authority to allow, the placing of street railroads in the streets of the municipality. That right is recognized by the supreme court of the state. Subsequent to those decisions an act was passed by the legislature wherein it is provided that previous to the city council permitting any street railway company to occupy a street for the purpose of a street railroad, they should, among other things, have the consent in writing of a majority of property owners, counted

by the foot front, and that written consent should be presented to the common council. After that was done, the council might proceed. So that it will be seen that the object and the purpose of the act is, as we understand it, to obtain the consent of the property owners to the street railroad passing through the street. There is no grant, if we understand it correctly, of any right from the person who signs the paper. The decision in a New York case that was cited to us in the first case we had—and the decision which we followed—was, that it was in effect a vote of the property owners. It was argued in the first place, that it was necessary that a vote should be given by the owner of the property himself, in writing, and we followed that line in the decision we made. So that the only thing that is to be done here is to present to the council the consent of the owner of the property, in writing, and upon that consent the council then has a right to exercise the power of allowing the street railroad to occupy the street.

The question here is as to the condition of the title of this property; what the rights of the commissioners were in the premises; what position they occupy. We find in 16 Ohio St., a decision of the supreme court of the state in the case of *Carder* v. *The Commissioners of Fayette County*. It is a case in which there had been a will made devising to Fayette county certain real estate, and it was contended that the devise was void; that the county could not take under a will; and there are some questions discussed in connection with that, and some points stated by the court, that we think throw some light upon this question. After discussing the right of the wife to make an election of dower under certain circumstances, they proceed and say:

"The principal question, however, and that mainly argued by counsel, arises in the other case: Can the devise to the county be supported as a valid devise, vesting the title of the property in the county or in its commissioners? The plaintiff says it cannot, substantially for three reasons: 1. Because a county or its commissioners have no power given them by law to take or hold real estate by devise. 2. Because the devise is to the county *eo nomine*, and not to its corporate agent, the board of commissioners. 3. Because the will does not specify the uses to which the property is to be appropriated.

"Our wills act authorizes devises to be made 'to any person.' A county, or, more properly, its board of commissioners, is a *quasi* corporation, and we see no good reason why it may not be regarded as a 'person' within the meaning of this act. The term was evidently intended to be used in a broad sense, and to include every party that could safely, and without contravening the policy of our laws, be made the recipient of testamentary donation, whether of real or personal property."

And the court then proceed to discuss somewhat the question of public policy:

"It is conceded, by counsel for plaintiff, that corporations proper, of all kinds, are 'persons,' within the meaning of this act, and can have the benefit of its provisions equally with natural persons. Why, then, should the legislature thus discriminate in their favor, and against political corporations? Surely the latter are as indispensable to the well being of society, and as much in need of the bounties of the rich and liberal, as are many of the former.

"By the act of March 3, 1891 (S. & C., 1228), the commissioners are 'authorized to receive donations of land, money, and other property * * * and to appropriate the same' to the expenses of erecting public buildings for the use of the county. If the word 'donations' here is technically too narrow to include devises, it at least shows the animus of the legislature, and sheds light upon the meaning of the wills act. This act of 1831 was in force at the time of the passage of the wills act, and it is hardly supposable that the legislature, by the use of the words 'any person' in the latter act, meant to exclude counties from the benefit of its provisions. Certainly no good reason is shown why they should so discriminate.

"The county commissioners are, by various statutes, authorized to 'purchase' real estate for the use of the county. S. & C., 1229; section 2249, section 1. Every lawyer knows, that title by purchase is title by any means except by descent, and, of course, includes title by devise. That the word 'purchase' will have this original and technical meaning, when used in a statute, and not controlled by other statutes, or the general policy of the law, was expressly decided by this court, in *American Bible Society* v. *Marshall et al.*, 15 Ohio St., 538. There is the total absence of any such policy, or counter legislation, and our laws, so far as they have gone, are in the contrary direction. The act of 1831 not only authorized donations of land to counties, but it contains, as do other statutes on the same subject, stringent provisions, in cases where the land is not donated, for insuring its purchase at the lowest price. If the commissioners can acquire land at the 'lowest bid'—which may be one cent—why may they not acquire it as a gift? No reason, outside of the supposed technical meaning of doubtful words, is attempted to be shown why they should not; and we think we are only carrying out the spirit and policy of our laws, and are violating no sound and settled rule of construction, when we hold, as we do, that a county may take and hold real estate by devise; that it is a 'person' within the meaning of the wills act, and may thus become a 'purchaser' within the meaning of the acts authoring counties to purchase real estate, or to take the same by gift.

"But it is said that the devise is void, because it is to the county by name, and not to the commissioners of the county. The board of county commissioners is the body—the *quasi* corporation—in whom is vested by law the title of all the property of the county. In one sense they are the agents of the county, and in another sense they are the county itself. It is in this latter sense that they acquire, and hold in perpetuity, the title to its property. In this capacity they not only act for the county, but also act as the county. A devise to the county is a devise to the commissioners of the county, and vests the title in them, for the uses of the county. The county, and the commissioners of the county, are often convertible terms. The statutes referred to often so use them, for while they provide for vesting the title of land in the commissioners, they speak of the land as 'belonging to the county.' The case seems perfectly analogous to those of devises to unincorporated churches, to parishioners, and to the poor of a hospital, where the title has always been held to vest in the parson, the church wardens, and the mayor and burgesses, respectively, for the use of the beneficiaries intended. In *Trustees of Green Township* v. *Campbell et al.*, decided at the last term (but not yet reported), this court held, that a grant to the legislature of the state of Ohio was a grant to the state of Ohio, and vested title in the state."

I read that as showing that the title of this property, is, for all practical purposes, in the county commissioners, or the board of county commissioners, if you please. In 5 Ohio, 204, is found an early case that we think has some bearing upon this question. The commissioners at that time were organized under the act of January 15, 1810, found in 8 Ohio L., 43, and section 3 of that act provides that the clerk shall keep a record of all the proceedings of the board in almost the same language that it does in the statute that I have read, now in force. That action was brought by suit in chancery from Stark county, the bill states, "to enforce the specific performance of a contract, made between the commissioners of Stark county and Wm. Reynolds, in his lifetime, reduced to writing, and dated May 28, 1823, for a lease of a certain part of the grounds originally appropriated, by the proprietors of the town of Canton, for a site for public buildings. Previous to the making of the contract, these proprietors had released all their interest to these grounds to the commissioners. The bill set forth the written contract, and charged a part performance, by payment of one year's rent, and entering into possession, and erecting buildings with the knowledge of the then commissioners, and without objection from them. The

present commissioners refused to perfect the contract, by making the lease, and deny their power to do so, or that of their predecessors to make it."

After making this statement of facts, Judge LANE, in delivering the opinion of the court, says:

"A corporation is an artificial person, and by the terms of its creation it possesses the same capacity, to purchase or sell, that an individual has who possesses the power to contract. This doctrine has been long settled, and repeatedly recognized, from a very early period to the present time. (Citing cases.) Indeed, so necessarily incidental is this power, that it has been held (10 Rep., 1), that a corporation cannot be created possessing the power of holding without the power of disposing, and that a clause in the charter, restricting the alienation of their property without consent of the chancellor, is void. The statutes restraining ecclesiastical and eleemosynary corporations, are all the limitations imposed by the laws of England upon the power to sell.

"Admitting that civil corporations incidentally possess the power to transfer a good title by deed, it may still be insisted that a person taking the estate holds it subject to the same trusts as while in the hands of the corporation. Perhaps such a trust may sometimes be raised by the terms of the donation. If the estate be made subject to the uses expressed on the face of the deed, which cannot be enjoyed consistently with the exclusive dominion and enjoyment of the alienee, perhaps the trust might be enforced; as where lands were given to a municipal corporation, to be held for a common, walk, or public fountain, perhaps the purchaser may take it, subject to the rights of the inhabitants. But the case before cited, from Veasy & Beame, shows that when property held for general corporate purposes is alienated, even for purposes not corporate, such alienation is absolute.

"In the present case, the lot was first conveyed by Wells to the commissioners, with a condition to be void in case the lot was appropriated to any other purpose than to erect the court-house and public offices. In 1823, Wells released his reversionary interest to the commissioners, by which, in our opinion, it became their absolute property for general purposes, and subject to alienation by them.

"It may be said, that by this construction of their powers the officers of corporations are invested with too large an authority over corporation property, and may waste it or place it beyond the reach of members, without remedy. We cannot avoid this result. We can relieve in case of fraud, and where a specific trust is raised we can enforce it; but the security against improvidence or bad management must be looked for in the interests, wisdom, and justice of the official agents, and in the relations they sustained to those who conferred the authority.

"Believing that the commissioners possess the powers of individuals, we enforce contracts against them in the same manner. The execution of this agreement is not an official duty created by law, and therefore properly the subject of a mandamus, but the right springs from contract, to enforce which an appeal may be properly made to our general chancery powers."

We understand by that, that under the law of 1810—which warranted the commissioners to enter into a contract for the sale of this property—without any record being made of any action, they are subject the same as individuals to have that contract enforced against them.

In 37 Ohio St., 205, is another decision of the supreme court bearing upon this question. I might say, in addition to the first section requiring a record to be kept, there is also another section, 878. This case in 37 Ohio St. originally was brought by the board of county commissioners of Athens county upon an agreement between it and the Baltimore Short-Line Railroad Co.

"This agreement was, in substance, that, in consideration of the grant by the commissioners of the right to the company to use and occupy portions of a certain county road permanently, and other portions temporarily, in the location, construction and operation of its railroad, the company

agreed to restore such portions of said road as should be temporarily occupied to its former condition; and for such portions as should be permanently occupied by the railroad, the company would provide new portions of said road, so that the said county road should be as good and as safe for the public as it was before it was taken possession of by the company. The petition avers that the company took possession of the county road under the agreement, appropriating portions thereof to the use of its railroad permanently, and occupying other portions temporarily in the construction of its railroad; but that the company had failed and refused to comply with said agreement on its part. Among other defenses, the defendant pleaded the following:

"'II. And as a defense to the said petition so finally amended, the defendant says, that the engagement and contract in said amended petition set forth, was not entered in the minutes of the proceedings of said board by the auditor of said county.'

"On demurrer, this defense was adjudged a bar to the action, and judgment was rendered dismissing the petition."

Judge WHITE delivered the opinion of the court. He says:

"Had the railroad company obstructed the highway without authority, section 17 of the act establishing boards of county commissioners, as amended March 7, 1873, would have afforded an adequate remedy. But the amended petition, on which the case was adjudicated, is founded on an agreement entered into between the commissioners and the railroad company, under section 12 of the act providing for the creation and regulation of incorporated companies, as amended April 15, 1857. S. & C. Stats., 278. The agreement prescribes the terms and conditions upon which the railroad company was to occupy and use the highway; and the company having taken possession of the highway and appropriated it to the uses of the railroad, under the agreement, the question is whether the company is bound to perform the agreement on its part.

"The company rests its defense on section 4 of the act of April 8, 1856, further to prescribe the duties of county commissioners. S. & C. Stat., 249. The section is as follows: 'It shall be essential to the validity of every contract entered into by the county commissioners, or order made by them, that the same shall have been assented to at a regular or special session thereof, and entered in the minutes of their proceedings by the auditor.'

"The ground on which the company claims to be relieved from the performance of the agreement, is that it was not entered in the minutes of the proceedings of the commissioners as required by this section.

"The object of the section is to protect the county from liabilities of the character named in the section, unless they are evidenced or authenticated in the mode prescribed. But where the agreement has been fully executed by the commissioners on the part of the county, and the defendant is in the full enjoyment of the rights and benefits intended to be conferred by the agreement, the failure to record cannot avail as a defense. The defendant is, in such case, upon the plainest principles of justice, precluded from raising the question."

And to the same effect is a case in 41 Ohio St., 602. We think that these cases are sufficient to show that the commissioners of the county were vested with the title to the county property, and might exercise the rights of an owner over it—subject, of course, to any special uses of the county for which it may be held; but at least so far as the acts to be performed by owners are such as a trustee may legally perform, they are the owners, and the persons who are to act. We find, too, in regard to real estate, that they treat with it and act as an owner does; they make contracts with regard to that property as an owner does; they are able to go into a court of chancery to resist an action that may be brought against them to enforce a contract. It is a principle generally that where an act has been performed, and parties have gone in under that act and rested upon it, the commissioners would not be allowed to plead the statute that I have already read.

Now, in this case, so far as the question is concerned, the commissioners are content with the consent that they have already given. Their consent has been one that has been acted upon by the street railway company. They have proceeded to take steps to construct a railroad or to occupy one that is constructed in the street, and are using it for the purpose of a street railway as a part of their line. The person who objects to this signature is a person who owns property upon the street, who has the right to object to the railway going upon the street until it had obtained the requisite number of consents. But we think this consent may be given by the board of commissioners signing a paper such as this. It is a vote; it is not a grant of any property; it is not a conveyance of property; it is an expression of the assent of the owners given in writing to the construction of the railway through the street, which written consent is to be laid before the common council of the city. We have no question, then, that if this had been signed "W. W. Cooke, John Ryan, and J. Englehart," as a board of county commissioners, that would have been sufficient; and we are constrained to the conclusion that it is sufficient. As it is, it gives the signatures of the three persons, and gives them as county commissioners; although it is not in the form that we would adopt, yet it does express the consent of the commissioners, acting as commissioners for the railway company to occupy.

We allowed testimony to be given showing that these signatures were made by the members of the board while they were sitting as a board. We think that testimony was properly given, and that it was proper to show by parol that the board of county commissioners acted, and the fact that the county auditor omitted to record it upon the county journals, does not preclude the party from showing the fact that the board as a board 'did act in relation to this matter.

We have endeavored to give this matter very close attention and a good deal of thought, and we have, after an examination of these cases, arrived at the conclusions that I have announced; and that being the only point submitted to us, the decree upon the other points will be the same as heretofore given. Upon the whole case the petition will be dismissed at the costs of the plaintiffs.

*Baker, Smith & Baker*, for plaintiffs.

*Orville S. Brumback* and *John F. Kumler*, for defendant.

---

# CORPORATION—JUDGMENT.